UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| v. : | Criminal Case No. 05-381 (JR) |
| SHAWN YARDE, : | |
| Defendant. : | |

**GOVERNMENT'S SUBMISSION TO THE COURT IN PREPARATION FOR THE UPCOMING PLEA HEARING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following in preparation for a plea hearing in the instant case.

I.  ELEMENTS OF THE OFFENSES:

A.  The essential elements of the offense of Conspiracy to Distribute and Possess With Intent to Distribute 5 Kilograms or More of Cocaine and 50 Grams or More of Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii), (iii), and 846 are:

1.  That an agreement existed between two or more people to commit the offense of distribution and possession with intent to distribute 5 kilograms or more of cocaine and 50 grams or more of cocaine base, also known as crack cocaine; and

2.  That the defendant intentionally joined that agreement.

II.   COPY OF THE PLEA AGREEMENT:

A copy of the plea agreement, not yet executed by the defendant, is attached.

III.  PENALTIES:

A.   Pursuant to 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) (ii), (iii), and 846 the crime of Conspiracy to Distribute and Possess With Intent to Distribute 5 Kilograms or More of Cocaine and 50 Grams or More of Cocaine Base carries a penalty of a term of imprisonment of not less than 10 years or more than life, a fine of not more than $4 million, and a term of supervised release of at least 5 years.

IV.   FACTUAL PROFFER IN SUPPORT OF GUILTY PLEA:

If this case were to go to trial, the government's evidence would establish the following beyond a reasonable doubt:

On September 15, 2005, members of the Drug Enforcement Agency's Washington Division Office Mobile Enforcement Team (MET) caused a confidential informant (CI) to place several consensually recorded telephone calls to the an individual identified as William Knight, and the defendant, Shawn Yarde. During these recorded phone conversations, the CI arranged to meet the defendant for the purpose of purchasing one kilogram of cocaine. During these phone conversations, the defendant informed the CI that he was presently in the area of the xxxxxxxxxx, Washington, DC. Based upon this information, agents from the MET set up surveillance in this area in preparation for the controlled purchase of one kilogram of cocaine by the CI from the defendant. At approximately 8:15 pm, the CI and the defendant agreed to meet approximately 20 minutes later in the parking lot of the residence of William Knight located in District Heights, Maryland to conduct the narcotics transaction.

At approximately 8:35 pm, surveillance agents observed the defendant enter into a burgundy colored Chrysler mini-van and start to drive down the xxxxxxxxxxxxx, Washington, DC.  Officers from the Metropolitan Police Department and agents from the MET initiated a traffic stop of the mini-van, and found the defendant driving the vehicle with no other occupants inside.  The defendant was instructed to exit the vehicle, at which time agents asked the defendant if he had any weapons on him that they should know about.  The defendant responded that there was a gun underneath the seat of the vehicle.  Agents recovered from underneath the driver's seat a loaded Glock 19 semi-automatic pistol.

The defendant was placed under arrest and a search of the vehicle was conducted incident to his arrest.  Recovered from underneath the front passenger seat of the van was one brick shaped package wrapped in foil, which contained one kilogram of a white powder substance that field tested positive for cocaine.  Recovered from the fold out compartment of the front passenger seat was a plastic bag containing several large white rock-like substances, which also field tested positive for cocaine and weighed approximately 63 grams.  Also recovered during the search was paperwork in the defendant's name, as well as mens clothing.  A search of the defendant's person incident to arrest resulted in the recovery of approximately $3,972 in U.S. currency.

The CI informed the agents that the defendant had previously provided him with 781 grams of cocaine powder that was seized by law enforcement  on September 13, 2005.

On September 16, 2005, agents from MET conducted a consent search at xxxxxxxxxxxx, Laurel, Maryland.  Present during the search were the occupants of the residence Christine Milbourne and Tony Marshall.  Recovered from the residence was over four kilograms of a white

powder substance and 320 grams of a white rock-like substance, both of which field tested positive for cocaine. Agents recovered from inside the kitchen Pyrex cookware with a white residue that field tested positive for cocaine. Also recovered from the residence was approximately $51,000 in U.S. currency. During the search, law enforcement officers confirmed that a key seized from the defendant at the time of his arrest on September 15, 2005 fit the front door to the residence. The occupants of the residence both confirmed to the agents that the defendant used the residence to store cocaine, currency, and to manufacture cocaine base.

The defendant knowingly and intentionally conspired with Tony Marshall, Christine Milbourne, William Knight, Ralph Williams, and others to distribute and possess with intent to distribute the cocaine and cocaine base described in this proffer.

A portion of the suspected narcotics seized in this case was forwarded to the Drug Enforcement Administration Mid-Atlantic Laboratory for analysis. The results of the analysis indicated that the white powder substance seized in this case was cocaine, with a total net weight of approximately 5,953 grams, and the analysis of the rock like substance seized was cocaine base, also known as crack, with a total net weight of approximately 382 grams.

At trial, the government would have called an expert witness to testify that the quantity, packaging, and value of the seized cocaine and crack cocaine is consistent with amounts commonly intended for distribution by drug traffickers. The expert witness would have also testified that the substance seized in this case was cocaine base, commonly known as crack cocaine, which can be consumed through smoking.

This factual proffer is a summary of the defendant's actions, and is not intended to be a complete statement of all facts and events related to this offense. The limited purpose of the

factual proffer is to demonstrate that a factual basis exists to support the defendant's guilty plea to the aforementioned offense, which is charged in the indictment.

                                              Respectfully submitted,
                                              KENNETH L. WAINSTEIN
                                              United States Attorney

                                              _____
                                              STEVEN B. WASSERMAN
                                              Assistant United States Attorney
                                              Federal Major Crimes Section
                                              555 4th Street, N.W.   Room #4241
                                              Washington, DC 20530
                                              (202) 307-0031; Fax: 514-8707

<u>CERTIFICATE OF SERVICE</u>

    I HEREBY CERTIFY that I caused a copy of the foregoing to be served upon the attorney for the defendant, Bernard Grimm, Esq., this 13th day of January 2006.

                                              _____
                                              Steven Wasserman
                                              Assistant United States Attorney