UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal No.  05-381 (JR) |
| v. : | |
| : | |
| SHAWN YARDE, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following memorandum to assist the Court in issuing an appropriate sentence in this case.

**I.    INTRODUCTION**

1. Pursuant to a plea of guilty entered on January 25, 2006, the defendant plead guilty to a one count superseding information charging him with Conspiracy to Distribute and Possess With Intent to Distribute 5 Kilograms or More of Cocaine and 50 Grams or More of Cocaine Base, also known as crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), (iii), and 846.

2. As he has two felony convictions for a controlled substance offense and crime of violence, the defendant is correctly categorized as a career offender pursuant to U.S.S.G. § 4B1.1(a), placing him in criminal history category VI.

3. Based upon the defendant's status as a career offender pursuant to § 4B1.1(a) and (b), the base offense level is 37, and the adjusted offense level is 34, which assumes a 3 level reduction for acceptance of responsibility.[1]  Based upon a total offense level of 34 and a criminal history category

---

[1] Defense counsel has filed an objection to the assessment of a two level enhancement in paragraph 21 of the Presentence Investigation Report, due to the defendant's admission that he was in possession of a firearm at the time of his arrest.  It is the government's position that as a

of VI, the Guideline range for imprisonment on the narcotics charges is 262-327 months.

## II.     SENTENCING LAW AFTER BOOKER

4. The Court should impose a sentence within the Sentencing Guideline range. In <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004). The Court invalidated the statutory provision that made the Guidelines mandatory: Title 18, United States Code, Section 3553(b)(1). <u>Booker</u>, 124 S. Ct. at 764. The Court upheld the remainder of the Guidelines as the most appropriate benchmark for informing courts as to the most reasonable sentence for a particular defendant who has committed a particular crime. Indeed, it remains the case that if the sentencing court imposes a sentence that is outside the range as set forth in the Guidelines, the Court must state in a written order of judgment and commitment the specific reason for the imposition of a sentence different from that described in the Guidelines. <u>See</u> 18 U.S.C. § 3554(c)(2). The sentence will then be subject to review by courts of appeals for "reasonableness." <u>Booker</u>, 124 S. Ct. at 766.

5. In <u>Booker</u>'s wake, this Court must continue to resolve disputed questions of fact and law and correctly calculate a defendant's sentence under the existing Sentencing Guidelines. <u>See</u> Fed. R. Crim. P. 32(i)(3)(B) (court must rule on unresolved objections to the Presentence Report or determine that resolution not necessary to sentencing). "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." <u>Booker</u>

---

result of the defendant's status as a career offender, the two level enhancement referenced in paragraph 21 does not effect the defendant's total offense level, which defaults to level 37 regardless of the applicability of the enhancement. The two level enhancement is not added on to the default base offense level of 37, and therefore, does not effect the total offense level.

124 S. Ct. at 767 (citing 18 U.S.C.A. §§ 3553(a)(4)&(5) (Supp. 2004)).  In light of this mandate – and the continued requirement of written explanations for sentences that fall outside of the range called for by the Guidelines and the new standard of "reasonableness" review – it is plain that a sentence within the Guidelines, while not required, is reasonable <u>per se</u>.  Not only is a sentence within the Guideline range presumptively reasonable, but it also accommodates the salutary goal, endorsed by both Congress and the Supreme Court, of meting out fair and uniform sentences.

6.  The Guidelines, aiming to achieve the uniform and appropriate treatment of like crimes, represent the distillation of two decades of careful study of sentencing practices across the country, and correlate as well to the varying severity of crimes as defined by Congress.  The Guidelines, consisting of offense characteristics and various grounds for departure, address the considerations relevant to sentencing, as articulated in Section § 3553(a), such as "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

7.  Indeed, the Sentencing Commission formulated the Guidelines only after initially canvassing prior sentencing practice and attempting to identify and assign weights to all the factors – both aggravating and mitigating – that judges traditionally used in determining an appropriate sentence.  <u>See</u> United States Sentencing Comm'n, <u>Supplementary Report on the Initial Guidelines</u>

and Policy Statements 16-17 (1987); see also 28 U.S.C. 994(m) (requiring Commission to "ascertain the average sentences imposed... prior to the creation of the Commission"); Comprehensive Crime Control Act of 1984, S. Rep. No. 98-225, at 168 (Commission should produce a "complete set of guidelines that covers in one manner or another all important variations that commonly may be expected in criminal cases").  Moreover, since the Guidelines were adopted, the Sentencing Commission has continued to study district court and appellate sentencing decisions and to "modify its Guidelines in light of what it learns."  Booker, 124 S. Ct. at 766; see id. at 767 (Sentencing Commission will continue "collecting information about actual district court sentencing decisions... and revising the Guidelines accordingly").

  8. It thus remains true that, absent unusual circumstances, the sentence in a criminal case should fall within the Guideline range as determined by this Court.  This view is shared by Congress and the Supreme Court.  As every Supreme Court Justice in the various opinions in Booker recognized, the Guidelines embody the express national policy goals, as articulated by Congress, that sentences be uniform across the country, to the extent possible, and that sentences be based on the offender's actual conduct and history.  See, e.g., id. at 761 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); id. at 759 (same) ("Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction."); id. at 783 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at 789 (dissenting opinion of Scalia, J.) ("the primary objective of the

Act was to reduce sentencing disparity.").

9. Booker, to be sure, departs from the prior practice of automatic reversal that would have accompanied the failure to sentence a defendant within the Guidelines. Such a sentence will now be reviewed instead for its "reasonableness." See Booker, at 766. Nevertheless, the Guidelines – resulting as they do from years of study of sentencing practices, crime statistics, national crime policy, and consideration of the factors that inform sentencing, see 18 U.S.C. § 3553(a) – provide the most concrete yardstick against which to measure what would be unreasonable. Booker does not allow courts to substitute their individual judgment about the appropriateness of the Guidelines range without justifying why their sentence takes the case outside of the heartland of situations already contemplated by the Guidelines. See Section 3553(c) (mandating consideration of the Guidelines); section 3553(c)(2) (mandating written explanations for imposing a sentence outside of the applicable Guideline range).

10. Fidelity to the Guidelines best accomplishes the purpose of fair and consistent sentencing and should occur absent unusual circumstances. This is so, said the court in United States v. Wilson, 350 F.Supp.2d 910 (D. Utah, 2005) – the day after Booker was decided – because the Guidelines represent the product of an expert commission, that has studied the sentencing process at great length, under the specific mandate of Congress, to fashion recommended sentences that carry out the purposes defined by Congress. The resulting Guidelines, Wilson held, plainly reflect the public's will, as expressed by their democratically elected representatives, in that Congress has repeatedly approved of the Guidelines or acted to adjust them to congressional preference. Wilson further observed that guided sentencing appears to have had a positive impact in deterring criminal conduct throughout the country, and thus serves the purpose of deterrence as well as punishment and

fairness. For all of these reasons, Judge Cassell determined that "the court will give heavy weight to the Guidelines in determining an appropriate sentence. In the exercise of its discretion, the court will only depart from those Guidelines in unusual cases for clearly identified and persuasive reasons." Id. at 912. A non-Guidelines sentence would, in the ordinary or usual case, unreasonably thwart legislative intent – in particular, the overriding concern with uniformity and the prevention of unfair disparities for similarly-situated defendants.[2]

11. In this case, as explained further below, no unusual circumstances exist that warrant an exception to the preference for Guideline sentencing. Therefore, the government respectfully recommends that the Court sentence the defendant at the low end of the applicable Guidelines range.

## III.   GOVERNMENT'S RECOMMENDATION

12. The Sentencing Guideline range is not only presumptively reasonable, for the reasons outlined above, but it is reasonable and appropriate for this defendant based upon the facts of this case and his criminal history. First, the plea agreement in this case resolved criminal conduct committed by the defendant both in the District of Columbia and in Maryland. In the absence of this plea agreement, the defendant would have faced the potential of receiving a lengthy sentence of

---

[2] In United States v. Ranum, 353 F.Supp.2d 984 (E.D. Wisc., 2005), the court takes issue with the observation in Wilson that post-Booker courts should depart only in unusual cases and for clearly identified and persuasive reasons. Ranum's arguments are unpersuasive. Ranum fails to explain why Booker, by severing the provisions which make the Guidelines mandatory, would invite courts to depart in usual or ordinary cases, or for unclearly identified or unpersuasive reasons. Nor is an explanation for such a departure apparent in any other source. Section 3553(a), which sets forth sentencing considerations, including reference to the Guidelines, is but one part of an entire statutory scheme. For example, Section 3553(c), which mandates written explanations for the imposition of non-Guidelines sentences, remains intact. To ignore the rest of the statutory scheme designed to effectuate the implementation of the considerations enumerated in the provision – in particular the expertise of the Sentencing Commission, the formation of the Guidelines, and congressional oversight of the Guidelines – would be an unreasoned approach to determining a sentence.

imprisonment from a conviction in D.C., as well as exposure to a lengthy period of incarceration from a conviction in the District of Maryland, which could have been imposed consecutive to any sentence the defendant received in his D.C. case. Accordingly, the instant plea agreement has essentially combined the defendant's criminal conduct into a single prosecution, thereby significantly reducing the defendant's potential overall period of incarceration.

Second, the defendant's criminal history establishes him as a career offender, and includes a conviction for reckless endangerment arising from an incident in which the defendant participated in an armed kidnaping and placed a gun to the head of the victim. In the instant case, the defendant has once again offended while possessing a firearm. In addition, the quantity of cocaine and crack the defendant was involved in distributing in this case is indicative of an individual entrenched in the business of narcotics trafficking. The possession of a firearm in connection with such activity, particularly in light of the defendant's prior criminal history, establishes him as a danger to the community. The severe penalties for distributing cocaine and crack, especially in cases involving individuals with prior convictions for crimes of violence and narcotics offenses, reflect society's view that such conduct represents a grave threat to the safety of our communities. While individual judges may differ about the propriety of the penalties imposed for such offenses, it is society through their elected representatives that has decided that the existing penalties are appropriate. Accordingly, sentences which depart from these penalties based upon remote or subjective factors result in disparate sentences between similarly situated defendants, and risk the appearance that judges are legislating from the bench. Accordingly, for these reasons, the Government submits that a sentence at the low end of the Guideline range is reasonable for this defendant.

13. Therefore, the Government is recommending that the Court sentence the defendant at

the low end of the Guideline range. First, as noted above, that sentence is within the Guideline range and is therefore presumptively reasonable. Second, the benefit the defendant has received from the plea agreement along with his criminal history suggest that a Guideline compliant sentence is appropriate. Finally, the possession of narcotics and firearms in the District of Columbia is a particularly serious offense given the extraordinary level of violence in the city associated with drugs and guns, which includes the recent murders of many juveniles and numerous innocent victims.

14. Finally, the government requests that the defendant be placed on supervised release for a period of five years.

Respectfully submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY
BAR NO. 451058


_____
STEVEN B. WASSERMAN
ASSISTANT UNITED STATES ATTORNEY
D.C. BAR NO. 453-251
FEDERAL MAJOR CRIMES SECTION
(202) 307-0031


CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Government's Memorandum in Aid of Sentencing is to be served upon counsel for the defendant, Bernard Grimm, Esquire, this 19th day of April, 2006.

_____
STEVEN B. WASSERMAN
ASSISTANT UNITED STATES ATTORNEY