UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Crim. No. 05-CR-381 |
| v. : | (JR) |
| : | |
| SHAWN YARDE : | |

**DEFENDANT'S SENTENCING MEMORANDUM PURSUANT TO 18 U.S.C. 3553**

Mr. Yarde, through counsel, respectfully moves this Court pursuant to 18 U.S.C.§3553 and United States v. Booker, 125 S. Ct. 738 (2005) to reduce Mr. Yarde's sentence to a sentence that is proportional to other defendants similarly situated.

As grounds for this motion, counsel would state the following:

1.      As the Court may know from various empirical studies, since the inception of the United States Federal Sentencing Guidelines in November of 1987, the guidelines have only reduced recidivism insofar as people have been sentenced to proportionally, longer periods of jail than before. Indeed given the number of motions filed under 5K1.1, which drastically reduced the sentences of defendants who are well involved in the drug culture the guidelines have essentially re-circulated those defendants, many drug king pins, promptly back to the community. Mr. Yarde, despite his possible career offender status, is not a recidivist.

2.      Mr. Yarde is presently, because of his Career Offender Status based on convictions in 1994 and 1996 exposed to, **22 years 3 months to 27 years 3 months** by virtue of 2 convictions one that occurred over 11 years ago.[1] Since that time Mr. Yarde has had no criminal convictions.

---

[1] But which is counted because his probation did not terminate until 1998 and a conviction 10 years ago.

3.      The Pre-sentence Writer assigned Mr. Yarde 2 points for a 1994 conviction for Possession of Cocaine.  Mr. Yarde was 19 years old at the time.  More importantly that conviction coupled with a 1996 conviction vaulted Mr. Yarde into a Career Offender Status under 4B1.1(A) and a Guideline Range of 262 to 327 months.

## I.     3553 Factors

Mr. Yarde is 31 years old.  He was born in New York City.  Because of the conditions in his community, Brooklyn, New York his parents decided to move Shawn and his sister Cheryl to the Washington, D.C. area around 1990.  His father was forced to stay in New York.  He worked for Schrader Sports in New York for 15 years.  By moving he would risk losing benefits and retirement.  He sent his checks to his family in Laurel, Maryland.  Mr. Yarde has 7 brothers and sisters all gainfully employed, except for his ½ brother Tony Marshall who was charged in Maryland with this same Conspiracy.

Mr. Yarde has 4 children Andrew Yarde age 10, Shayla Yarde age 9, attend Fairfield Elementary in P.G. County, Maryland, Andre Yarde age 7 who attends Eisenhower Elementary in Prince George's County.  Mr. Yarde, at the time of his arrest was living with Akita Powell in Silver Spring, Maryland, the mother of Shayla, and Andre Yarde.  Andrew Yarde was born from a previous relationship to Catherine Delgado.  Mr. Yarde remained a father to Andrew Yarde and provided child support.  Ms. Powell also has a 4 year old by another man who is no longer present in her life.  Mr. Yarde has assumed the role of father to Takia Powell who is now 4.

## Employment

1.      For the past 3 years late 2003 to 2006 Mr. Yarde worked at Triple D Used Cars as a car salesman.

2.      From 1994 to 1995 Mr. Yarde worked at Grey Hound Bus Terminal in Kenilworth,

Maryland cleaning buses. Unlike many individuals convicted of sell drugs Mr. Yarde maintained almost continuous legitimate employment. More importantly, he wasn't simply a biological father, to his children, he was a parent. As Ms. Powell describes, Mr. Yarde would help the children without their homework, attended school functions and cheerleading events for his daughter Shayla who has been in numerous cheerleading competitions.

3. From February 1992 until the summer of 1993 Mr. Yarde worked at Greater Laurel Nursing Home. He prepared meals for the residents.

4. All this time, from 1994 up to his arrest Mr. Yarde was living almost a double life. While he held numerous jobs in the past 10 years he also sold drugs with his brother, Tony Marshall. Small amounts grew larger especially as he continued to use drugs, commencing with marijuana at age 15, cocaine at 25 for 6 years up until his arrest.

5. Mr. Yarde isn't a violent individual but someone, like many, who believed selling drugs, could pay for his drug habit and pay bills. Letters from his family paint a picture of a completely different person.

6. His father, Mr. Trevor Yarde, in his letter has taken responsibility for Shawn's involvement and stated that Shawn got "involved with the wrong crowd." His explanation is an understandable yet transparent defense to being involved in drug dealing. However, what Mr. Trevor Yarde does state is that Shawn has worked for past 10 years and was an excellent father to his children.

7. His common law wife, Akita Powell, does not make excuses for Shawn's conduct but explains that despite being involved in drug dealing he was an excellent father to his children. It appears that Mr. Yarde realized that he did not want his failures to be passed on to his children. That's why his wife describes him as a disciplinary of the family.

Counsel is asking the Court to consider the guidelines along with the other factors set forth in 18 U.S.C. §3553(a).

Following Booker, Courts need not justify sentences outside the applicable guideline range by citing applicable guideline ground for departure or factors that take a case outside the "heartland." Rather, as long as this sentence imposed is reasonable and is supported by the factors outlined in §3553, the Court may disagree with the range proposed by the guidelines and exercise discretion to impose a sentence outside the range of the guidelines.

After considering all the factors set forth in §3553(a), the Court must impose a sentence that:

> "reflects the seriousness of the offense, promotes respect for the law, provide just punishment, affords adequate deterrence, protects the public, and effectively provides the defendant with the needed education or vocational training and medical care."

United States v. Booker, 125 S. Ct. 738, 765 (2005).

§3582 of Title 18 provides:

> "The Court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of term, shall consider the factors set forth in §3553(a) to the extent they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation."

Without that limitation and considering all the purposes of sentencing the Court must impose a sentence that is "significant, but not greater than necessary, to comply with the purposes set forth in paragraph (a) (2) of 3553." 18 U.S.C. §3553(a) (Emphasis Added).

A review of all the applicable factors set forth in §3553(a) demonstrates that a sentence significantly lower than the low end of career offender status of 262 months would be reasonable in Mr. Yarde's case. More importantly, a lengthy sentence of incarceration is not necessary to meet the sentencing goals and purposes and objectives as set forth in §3553(a)(2).

## II.     Even If Applicable, Sentencing Under the Career Offender Provision Is <u>Unreasonable.</u>

Among the Guideline's various sentencing provisions, the "career offender" provision deserves the very least deference from this Court as a measure of reasonableness.  The principal reason the Government and some courts have given for continuing to give the guidelines as a whole "great weight," <u>i.e.</u>, that the Sentencing Commission has "carefully calibrated the extent to which offender characteristics determine a sentence," <u>United States v. Wilson</u>, 355 F. Supp. 2d 1269, 1275 (D. Utah 2005), simply does not apply to the career offender provision.  Section 4B1.1 has nothing to do with the "institutional advantages of the Sentencing Commission," <u>id</u>. at 1281, and is not a product of the Commission's expertise or study.  <u>Cf</u>. <u>Booker</u>, 125 S. Ct. 738, 767 (2005) (Breyer, J.) ("[t]he Sentencing Commission remains in place writing guidelines, collecting information about actual district court sentencing decisions, undertaking research, and revising the Guidelines accordingly").  To the contrary, Congress engraved the career offender provision onto the Sentencing Commission through the passage of 28 U.S.C. §994(h).  That statute states that the Sentencing Commission:

> shall assure that the Guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized for categories of defendants in which the defendant is eighteen years old and has been convicted of a felony that is a crime of violence or a controlled substance offense and has previously been convicted of two or more prior felonies, each of which is either a crime of violence of a controlled substance offense

<u>Id</u>. <u>See also</u> <u>United States v. Phelps</u>, 2005 WL 984156, *6 (D. Neb.) (noting the "statutory directive" of 28 U.S.C. §994(h)).  Consequently, §4B1.1 is not a product of the wisdom, study or expertise of the Sentencing Commission.  Rather, it simply tracks a statute passed by Congress that contained a highly specific directive for the Commission to enact, without the benefit of empirical research

supporting it as is noted in other guideline provisions.

The career offender provision is a prime example of "the Commission not function[ing] as a sentencing expert in the way [its originating] statute envisioned." United States v. Jaber, 362 F. Supp. 2d 365, 374 (D. Mass. 2005).

The definition of a "career offender" foisted on the Commission "subjects some defendants to not just substantial punishment, but extraordinary increases in their advisory Guideline ranges." Phelps, 2005 WL 984156 at *6. The court in Phelps found: "In some of these cases, the Court believes a non-Guideline sentence may be sufficient, but not greater than necessary, to both comply with Congress' desire to punish recidivism and the purposes set out in §3553(a)(2)." Id.; see also United States v. Carvajal, 2005 WL 476125 (S.D.N.Y.) (declining to impose career offender sentence of 262 to 327 months for conspiracy to distribute crack cocaine and instead imposing non-guideline sentence of 168 months).

The Sentencing Commission itself has recognized the excessive nature of a career offender provision. In its recent publication Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform (November 2004), the Commission identified the career offender provision as a sentencing rule that disproportionately impacts a "particular offender group" but serves "no clear sentencing purpose." The "particular offender group" disparately impacted by the career offender provision is African-American offenders, such as Mr. Yarde. African-American offenders constituted 26% of offenders sentenced under the guidelines in 2000, but were 58% of offenders sentenced under the career offender provision, due mostly to the "inclusion of drug trafficking crimes in the criteria qualifying offenders for the guideline." Id. at 131-33.

Consistent with Booker, supra and the arguments made above, Mr. Yarde's age, his family,

and his background counsel is asking the Court pursuant to 18 U.S.C. §3553 to impose a sentence that is reasonable, considering all the factors. That sentence, counsel submits should be drastically lover than 262 months.

WHEREFORE, for the foregoing reasons and any other reasons deemed meritorious by the Court, counsel and Shawn Yarde respectfully request that the Court grant this motion.

Respectfully submitted,

/s/
BERNARD S. GRIMM
503 D Street, N.W.
Suite 250
Washington, DC 20001
(202) 371-0300