# EXHIBIT A

IN THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY, MARYLAND

- - - - - - - - - - - - - - - - x
                                 :
STATE OF MARYLAND                :
                                 :
    v.                           :   Criminal No. K-1996-000898
                                 :
SHAWN YARDE,                     :
                                 :
    Defendant.                   :   Annapolis, Maryland
                                 :
- - - - - - - - - - - - - - - - x   December 19, 1996

**HEARING**

WHEREUPON, proceedings in the above-entitled matter commenced.

    BEFORE: THE HONORABLE CLAYTON GREENE, JR., Judge

    APPEARANCES:

    FOR THE STATE:

    EILEEN REILLY, Esq.
    Office of the State's Attorney
    7 Church Circle, Suite 200
    Annapolis, MD 21401

    FOR THE DEFENDANT:

    VICTOR A. HOULON, Esq.
    Nationsbank Building, Suite 206
    7515 Annapolis Road
    New Carrollton, MD 20784

*CompuScribe*
*(301) 577-5882*

# I N D E X

|  | PAGE |
|---|---|
| Preliminary Matters | 3 |
| Defendant Qualified | 4 |
| Statement of Facts by Eileen Reilly, Esq. Attorney for the State | 8 |
| Ruling - Judge Clayton Greene, Jr. | 12 |

**KEYNOTE:** "---" Indicates inaudible in transcript.

1                    **P R O C E E D I N G S**

2          THE COURT: All right, State?

3          MS. REILLY: Your Honor, at this time I would call

4   K-96-898, the State of Maryland versus Shawn Cameron Yarde.

5   Your Honor, this case was originally I believe Mr. Reina's

6   case.

7          It is my understanding there is a plea agreement

8   where Mr. Yarde will be entering a guilty plea to the count

9   -- I am sorry, it is actually nolo contendere to reckless

10  endangerment.

11         The recommendation and sentencing is two years of

12  probation and a generally suspended sentence. The

13  restitution figure would be the amount of the insurance

14  deductible, which I do not believe has --

15         MR. HOULON: Been established. We assume it would

16  be somewhere between $250 and $500. And if the State will

17  just let us know what it is, we will be happy to commit and

18  pay that. That is the agreement in a nolo contendere plea to

19  reckless endangerment, two years probation and a generally

20  suspended sentence.

21         And the reason for that is this case started out

22  with the appearance of a car jacking, but what it turned out

23  to be was a tendering of a motor vehicle as collateral that

24  became very unsatisfactory to the mother of the complainant

25  after she learned about it.

jjh                                                                                      4

1           And also the complaining witness and one other
2   State witness who were -- are the only witnesses
3   theoretically for the State and wound up in jail themselves.
4           THE COURT: All right. Sir, would you please state
5   your name for the record.
6           THE DEFENDANT: Shawn Cameron Yarde.
7           THE COURT: And how old are you, Mr. Yarde?
8           THE DEFENDANT: Twenty-one.
9           THE COURT: And are you able to read and write?
10          THE DEFENDANT: No, sir.
11          THE COURT: What is your educational background?
12          THE DEFENDANT: Ninth grade.
13          THE COURT: All right. Are you under the influence
14  of any drugs, alcohol or pills at this moment?
15          THE DEFENDANT: No, sir.
16          THE COURT: Are you now on parole or on probation?
17          MR. HOULON: He is, Your Honor. That is the reason
18  for the nolo contendere. He has a 1994 probation out of
19  Prince George's County on a CDS charge.
20          THE COURT: Do you understand that by virtue of
21  your plea here that if I find you guilty it may violate your
22  probation?
23          MR. HOULON: It is a nolo contendere, Your Honor.
24          THE COURT: Oh, nolo, I am sorry.
25          MR. HOULON: And by case law it cannot violate his

jjh                                                                     5

1  probation.

2            THE COURT: But I have to accept the nolo?

3            MR. HOULON: I beg your pardon?

4            THE COURT: I have to accept the nolo?

5            MR. HOULON: Hopefully, you will do that
6  considering the proffer that I made to you.

7            THE COURT: I am sorry, you have to back up, I
8  thought you said Alford and that is why I went in the train
9  that I am going. Let me back up a minute. State, are you
10 recommending this plea?

11           MS. REILLY: Your Honor, this was worked out
12 between Mr. Reina and Mr. Houlon. That was the agreement
13 between Mr. Reina and Mr. Houlon.

14           THE COURT: Do you understand that by virtue of a
15 nolo plea that you are essentially telling me that there is
16 no contest to this charge?

17           THE DEFENDANT: Yes, sir.

18           THE COURT: All right. Did you discuss this with
19 your attorney?

20           THE DEFENDANT: Yes, sir.

21           THE COURT: Did he explain to you the law you are
22 accused of violating?

23           THE DEFENDANT: Yes, sir.

24           THE COURT: Did he explain to you any possible
25 defense you had to these charges?

jjh                                                                    6

1      THE DEFENDANT: Yes, sir.

2      THE COURT: Did he explain to you the implication

3  of a nolo plea?

4      THE DEFENDANT: Yes, sir.

5      THE COURT: Okay. Do you have any questions about

6  anything that Mr. Houlon explained to you?

7      THE DEFENDANT: No, sir.

8      THE COURT: All right. These are very serious

9  charges, but your lawyer has explained to me the

10 circumstances of the plea. And has there been any force,

11 threat or intimidation of any kind to get you to plea in this

12 fashion?

13     THE DEFENDANT: No, sir.

14     THE COURT: Has there been any promises,

15 commitments as to leniency other than the plea bargain itself

16 to induce you to plea?

17     THE DEFENDANT: No, sir.

18     THE COURT: All right. Now you understand that

19 there is not going to be a trial?

20     THE DEFENDANT: Yes, sir.

21     THE COURT: And do you understand that there is --

22 you do have a right to a trial by jury?

23     THE DEFENDANT: Yes, sir.

24     THE COURT: And you have a right to a court trial?

25     THE DEFENDANT: Yes, sir.

1                THE COURT:  That in essence you are entering this
2     no contest plea and leaving the disposition up to me.  Do you
3     understand that?
4                THE DEFENDANT:  Yes, sir.
5                THE COURT:  Is that the way you want to proceed?
6                THE DEFENDANT:  Yes, sir.
7                THE COURT:  Do you have any questions about the
8     rights you are giving up?
9                THE DEFENDANT:  No, sir.
10               THE COURT:  In essence you are going to get a
11    sentence if I accept the plea.  And do you understand that if
12    you went to trial and there was an issue as to your guilt or
13    innocence by virtue of your pleading not guilty, you could
14    walk out of here without any conviction or without sanctions.
15    Do you understand that?
16               THE DEFENDANT:  Yes, sir.
17               THE COURT:  And that you have a right to this jury
18    trial though I explained where the jury's decision would be
19    unanimous.  All 12 would have to agree that you are guilty in
20    order to be found guilty.  Do you understand that?
21               THE DEFENDANT:  Yes, sir.
22               THE COURT:  And if they couldn't agree, then you
23    would be -- if not a hung jury, you would be acquitted.  Do
24    you understand that?
25               THE DEFENDANT:  Yes, sir.

jjh                                                                         8

1        THE COURT: Knowing what I said, do you still wish
2   to proceed in this fashion?
3        THE DEFENDANT: Yes, sir.
4        THE COURT: State, any other advisement you want to
5   give him?
6        MS. REILLY: Your Honor, this is to count number 10
7   of the charging document, which is reckless endangerment
8   regarding Sharn Chapman. The maximum penalty is five years
9   under $5,000.
10       THE COURT: Do you understand that I could impose
11  the five-year sentence even though the recommendation is no
12  more than two years supervised probation?
13       THE DEFENDANT: Yes, sir.
14       THE COURT: Knowing that, do you still wish to
15  proceed in this fashion?
16       THE DEFENDANT: Yes, sir.
17       THE COURT: I find that the plea is entered
18  voluntarily. I will accept it. A brief statement of facts.
19       MS. REILLY: Your Honor, if the State had proceeded
20  to trial in this matter, witnesses would have been called to
21  testify that on February 20th of 1996, the Defendant, Shawn
22  Cameron Yarde, standing left to counsel in the white shirt
23  and tie, met with an acquaintance of his, Sharn Chapman.
24       Mr. Chapman went to a residence in the 3400 block
25  of Andrew Court in Laurel, Anne Arundel County, to meet with

1  the Defendant. Mr. Chapman went to that residence in a 1991
2  Acura Integra, which was owned by his mother, Anna Chapman.
3      When he walked into the apartment, the Defendant
4  put a 45 caliber handgun to Mr. Chapman's head and asked
5  where his $10,000 was. Mr. Chapman testified that he didn't
6  know what the Defendant was talking about.
7      At that point Mr. Chapman was forced into his
8  mother's car and ordered to drive down the street.
9  Mr. Chapman was told repeatedly that he would be shot if he
10  did not get his money.
11      Eventually Mr. Chapman was released; however, the
12  car was kept. The car -- there were threats made to
13  Mr. Chapman and his mother that the car would be burned if
14  the money was not provided. Eventually the car was recovered
15  in Prince George's County. It had been set afire and
16  damaged.
17      The evidence would indicate, Your Honor, that by
18  Mr. Yarde's actions that day he created a substantial risk of
19  death or serious physical injury to Sharn Chapman.
20      The events did occur in Anne Arundel County. And
21  as I indicated the witness would identify the Defendant
22  standing left to counsel to be the person who placed him in
23  such danger. And that would be the statement of facts, Your
24  Honor.
25      THE COURT: Counsel?

jjh                                                                10

1        MR. HOULON: Your Honor, I would ask the Court to
2   consider in pari materia the remarks that I made at the
3   outset of this proceeding when we were proffering to you the
4   plea agreement. Other than that we have no disagreement.
5        THE COURT: Counsel, approach the Bench.
6        (Whereupon, a Bench Conference followed.)
7        THE COURT: I must be missing something ---
8        MR. HOULON: What really happened here and why the
9   plea agreement that has been filed and has been reached are
10  as follows: It turned out that my client was given this car
11  by the Chapman --- as collateral for something.
12       When he got home --- car the other guy said he lied
13  to the mother. The mother got the --- family, the reality of
14  it came to light. And on top of that, Mr. Chapman and the
15  only other witness for the State, they wound up in jail on
16  some other matter. Are we off the record now?
17       THE COURT: We are never off the record, of course
18  not. We have a central monitor and everything you tell me is
19  on the record.
20       MR. HOULON: --- but it is on the record.
21       THE COURT: Thank you.
22       MR. HOULON: Plus my client, in a totally unrelated
23  matter, is cooperating with the State. --- a little bit ---
24       THE COURT: All right.
25       MR. HOULON: So I think you know the personalities

```
 1  involved, Mr. Reina, Ms. Reilly and myself. And I hope you
 2  would consider us to be responsible people.
 3          THE COURT: No, that is not my question. I am just
 4  trying to --- the facts need to be on the record.
 5          MR. HOULON: They are there.
 6          THE COURT: Okay.
 7          MR. HOULON: Thank you.
 8          THE COURT: Very well, thank you.
 9          MS. REILLY: Thank you, Your Honor.
10          (Whereupon, the Bench Conference was concluded.)
11          MR. HOULON: Would you stand back up again please,
12  sir.
13          THE COURT: Very well, the Court will accept the
14  plea.
15          MR. HOULON: Thank you very much, Your Honor. We
16  would ask that you make disposition in this case according to
17  the joint recommendation.
18          THE COURT: Is there anything your client wishes to
19  say before I make a finding?
20          MR. HOULON: I have discussed with him his right to
21  allocute and he has indicated that he would like to remain
22  silent. And as his counsel I have no further statements
23  other than those that I have already made.
24          THE COURT: Does your client have any problem with
25  alcohol or drugs?
```

1         MR. HOULON: No, sir. He is on a probation out of
2    Prince George's County that monitors those types of problems.
3         THE COURT: The Court will enter a verdict of
4    guilty. The Court will sentence you to five years.
5         MR. HOULON: Excuse me, Your Honor, that would rule
6    a judgment of nolo contendere.
7         THE COURT: You are absolutely right. The Court
8    will enter a judgment of nolo contendere. I will sentence
9    you to five years to the Commissioner of Corrections. I will
10   suspend that five-year sentence. You are on probation for
11   the next two years; that probation will be supervised by the
12   Department of Parole and Probation.
13        In addition to the general rules of probation, you
14   will have to pay the court costs in this proceeding as well
15   as a supervision fee in the amount of $25 per month for the
16   duration of the supervision.
17        You have a right to file for leave to appeal. If
18   you file that request it must be filed in writing within the
19   next 30 days. Within 10 days of noting your appeal you must
20   request a transcript of these proceedings by sending a letter
21   to the Clerk of this Court.
22        You also have a right to file for modification of
23   sentence. If you file that request it must be filed within
24   the next 90 days and it must be filed in writing.
25        Because your sentence exceeds two years, you have a

jjh                                                                13

1  right to file for review by a three-judge panel. That panel
2  would be judges of this circuit. I would not be one of those
3  judges. The judges within their discretion could increase,
4  or lower your sentence, or leave it as it is. And within 10
5  days of today you have a right to file for a new trial. That
6  also must be filed in writing.
7              If you wish to avail yourself of these remedies, I
8  am certain Mr. Houlon can assist you.
9              MR. HOULON: Thank you very much, sir.
10             MS. REILLY: Thank you, Your Honor. Your Honor, as
11 to the restitution with the court order that was --- within
12 30 days I am sure the insurance deductible.
13             MR. HOULON: I don't -- if the State needs more
14 than 30 days --- for the record as long as the State advises
15 us within that two-year period of probation and we will pay
16 it.
17             THE COURT: All right. The Court will order
18 restitution, amount to be determined within the next two
19 years.
20             MS. REILLY: Thank you, Your Honor.
21             (Whereupon, the hearing was concluded.)
22
23
24
25

# C E R T I F I C A T E

CompuScribe, hereby certifies that the attached pages represent an accurate transcript of the duplicated electronic sound recording of the proceedings in the Circuit Court for Anne Arundel County in the matter of:

Criminal No. K-1996-000898

STATE OF MARYLAND

v.

SHAWN YARDE


By:

Jean J. Hudson
Transcriber