# EXHIBIT B

Case 1:05-cr-00381-JR    Document 23-4    Filed 07/13/2006    Page 1 of 12

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA      :    Criminal No. 05-0381
                              :
v.                            :    June 29, 2006
                              :
SHAWN C. YARDE,               :    9:30 a.m.
          Defendant           :
. . . . . . . . . . . . . . . :    . . . . . . . . . . .


TRANSCRIPT OF SENTENCING
BEFORE THE HONORABLE JAMES ROBERTSON
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Government:     STEVEN B. WASSERMAN, ESQUIRE
                        UNITED STATES ATTORNEY'S OFFICE
                        555 Fourth Street, NW
                        Washington, D.C.  20530


For the Defendant:      BERNARD S. GRIMM, ESQUIRE
                        LAW OFFICE OF BERNARD S. GRIMM
                        503 D Street, NW
                        Suite 250
                        Washington, DC 20001
                        (202) 371-0300


Court Reporter:         REBECCA STONESTREET, RPR, CRR
                        Official Court Reporter
                        Room 6415, U.S. Courthouse
                        Washington, D.C. 20001
                        (202) 354-3249


Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

2

1                    P R O C E E D I N G S

2           COURTROOM DEPUTY:  This is United States of America
3  versus Shawn Yarde, Criminal Number 05-0381.  Mr. Wasserman
4  present for the government, Mr. Grimm present for the defendant.
5  The defendant is present in the courtroom.
6           THE COURT:  This case was put over until today because
7  there was some incomplete information in the record about a
8  reckless endangerment conviction of this defendant's.  The
9  government, I gather, has some information.  Mr. Grimm wanted
10 this put off; there's some harsh words between counsel about
11 whether it should be put off or not.  I don't want to talk about
12 that today, I want to talk about the information we have on the
13 reckless endangerment.  What do you have, Mr. Wasserman?
14          MR. WASSERMAN:  Your Honor, I had procured the tape to
15 the plea hearing for that reckless endangerment charge, and
16 actually Mr. Grimm, I think at the same time, had actually
17 gotten the transcript of that hearing.  I've looked at the
18 transcript, it's consistent with what's on the tape that I
19 received from the state's attorney's office.
20          Obviously it reflects the fact that the defendant pled
21 nolo contendere in 1996 to a reckless endangerment charge.  The
22 factual proffer from the state sets forth essentially what the
23 police report indicated, which was that the defendant was in a
24 dispute with the victim during which time the defendant placed a
25 gun to the victim's head concerning a debt of about $10,000 that

3

1  was owed.  The defendant then took the defendant's car -- or
2  excuse me.  The defendant then took the victim's car as
3  collateral for this debt and threatened to burn the vehicle if
4  he did not pay the debt.  This vehicle was actually owned,
5  apparently, by the victim's mother.
6       The defense counsel for the defendant, prior to the
7  actual plea and then at the bench, stated what I think would be
8  the defendant's version of facts, which was essentially that the
9  vehicle was given as collateral to the defendant for a debt.
10 When the mother and the owner of the vehicle, the mother of the
11 victim, found out about this, she became angry, and I think at
12 least the insinuation I get from the transcript is that this
13 allegation of it being forcibly taken was untrue.
14      The other facts in the record are that the victim and
15 the other eyewitness for the state had subsequently been sent to
16 jail on another charge, which resulted in the plea to the lesser
17 offense of reckless endangerment.  There were about 10 counts in
18 that indictment against the defendant, I believe for carjacking
19 and kidnapping, among others.
20      So there's sort of a contradiction in the state's
21 version and the defendant's version of events.  I would note
22 that the vehicle that was taken as collateral was ultimately
23 found burned, which is consistent with what the victim claimed
24 in the police report.
25      The state's attorney who negotiated the plea with

4

1  defense counsel is in retirement, and the state has destroyed
2  his file because of the age of the case, so this was all I was
3  able to get was the tape of the hearing.  My view of it is that
4  this was essentially a drug deal that went bad.  I think it's
5  clear from what the defendant was involved in at that time, and
6  probably the victim in this case, who also apparently had a
7  fairly shady past, that there was money owed, the vehicle was
8  taken, the vehicle was ultimately burned.
9           It's a nolo plea, there are two versions of facts.
10 From my standpoint, he pled to a reckless endangerment charge.
11 That, as an element in Maryland, requires a serious risk of
12 death or serious bodily injury, so there had to have been that
13 element involved in that conviction.
14          He essentially pled no contest to the factual proffer
15 by the state.  That's all the information I've been able to get.
16 I don't know if the Court has any questions.  I'm sure Mr. Grimm
17 has his view of the facts.
18          THE COURT:  Mr. Grimm?
19          MR. GRIMM:  Yes, Your Honor.  And I proffer up to the
20 Court, if it pleases, the transcript of the plea.  I gave
21 Mr. Wasserman a copy.  If I could borrow it for a minute, I can
22 tell the Court and direct the Court to page eight of that
23 transcript - for the record, that's dated December 19th, 1996 -
24 where on the bottom it states Mr. Riley, who's the prosecutor,
25 and he goes through the traditional statement of facts which

5

1 would be the standard Rule 11 requirement.  In fact, it's
2 required under Rule 2-242 of the Maryland rules.
3     Mr. Yarde never enters a plea of nolo contendere.  You
4 can read that transcript inside and out.  Mr. Yarde never agreed
5 to that statement of facts.  That plea is per se defective.  The
6 prosecutor read the statement of facts, and the Court can read
7 after page eight, and no one ever said to Mr. Yarde, do you
8 agree with that statement of facts.  Because Mr. Yarde has told
9 me from day one he's violently disagreed with this statement of
10 facts.
11     THE COURT:  The sentencing problem in this case was
12 occasioned by the probation office's classification of Mr. Yarde
13 as a career offender.  He becomes a career offender only because
14 of two prior convictions, one of which is this conviction we've
15 been discussing of reckless endangerment.
16     Mr. Grimm has handed me a transcript of the plea
17 proceeding before Judge Clayton Green in the Circuit Court for
18 Anne Arundel County, Maryland on December 19th, 1996, and has
19 asserted that the plea is on its face invalid.  The what we
20 would call a Rule 11 colloquy, which I've just been over,
21 indicates that at the time Mr. Yarde was 21 years old, he was
22 represented by counsel, he said he was not able to read and
23 write, and was a ninth grade -- had a ninth grade education.
24     There was discussion between the Court and the
25 defendant's lawyer about a plea of nolo contendere.  I don't

6

1  know how somebody who can't read and write the English language
2  can be expected to understand what nolo contendere means.  The
3  Court did ask him, "Do you understand that by virtue of a nolo
4  contendere plea, you are essentially telling me that there is no
5  contest to this charge?"  The defendant answered yes.  There is
6  no discussion in this plea colloquy of the elements of the crime
7  that Mr. Wasserman has recited for me.
8         There is a proffer of facts by the prosecution which
9  does recite that the defendant put a .45 caliber handgun to
10 Mr. Chapman's head and asked where his $10,000 was, at the end
11 of which defense counsel said, "I would ask the Court to
12 consider impari materia," whatever that meant, "the remarks that
13 I made at the outset of this proceeding when we were proffering
14 the plea agreement.  Other than that, we have no disagreement."
15 That's counsel talking.
16         The judge was a little confused by the proffer.  There
17 was a bench conference to try to straighten it out.  The bench
18 conference, in my reading, didn't straighten anything out.  The
19 Court sentenced the defendant on the spot to five years and
20 suspended it, with two years of probation.
21         I want the record to be very clear about this.  I'm
22 going to find that that nolo plea in Maryland in December 1996
23 does not qualify as a predicate crime for purposes of
24 designating this defendant as a career criminal.  It is a close
25 question, and I don't want anybody to think that this is just

7

manipulating the guidelines. But the guidelines that is assigned to this man's offense, if he is a career offender, the guidelines range would be between 262 and 327 months. The last time we were here, Mr. Grimm declaimed that such a sentence at the high end is 33 months less than the low end of the guidelines for first degree murder while armed. The mid range of the guidelines would be commiserate with second degree murder.

The plea in this case is of conspiracy to distribute and possess with intent to distribute five kilos or more of cocaine and 50 grams or more of crack cocaine. That's a very serious drug-dealing offense, and the punishment should be a serious punishment. But 22 years plus is beyond the pale, and accordingly, I am finding that the appropriate guidelines calculation does not include that reckless endangerment charge.

Now, I have to say, having reached that conclusion, that I need to go back and rehearse how the guidelines do come out. Who can help me with that, Mr. Grimm, Mr. Wasserman?

MR. GRIMM: Your Honor, if he's not in career offender status, his total criminal history assignment would be the two points for the 1994 conviction in PG County and a single point for -- well, my position has actually been retracted. He does not get that single point, because that does not, in my position, constitute a conviction for the reasons outlined by the Court. So he would have two points and he would be

8

1   Level 34, Criminal History Category 1.

2           THE COURT: Is that right, Mr. Wasserman?

3           MR. WASSERMAN: Your Honor, I am going to now request a
4   continuance of this proceeding so that I can research the
5   Court's position on the status of that conviction. This is not
6   something that I anticipated would be argued, and frankly I just
7   am not familiar with whether this is something that there's case
8   law on. So I would like the opportunity to take a look at that.

9           Frankly, I think that if --

10          THE COURT: What do you want, further argument on my
11  guidelines decision?

12          MR. WASSERMAN: That's correct, Your Honor.

13          THE COURT: Well, I thought it was clear that that's
14  what we were going to do today. You're the guy who didn't want
15  a continuance.

16          MR. WASSERMAN: Your Honor, this was not the discussion
17  of -- or my understanding of the purpose of this hearing was to
18  determine whether we could find out specifically the
19  circumstances surrounding his plea. It was not anticipated by
20  me that Mr. Grimm would argue or that the Court would consider
21  that the conviction for reckless endangerment would be void and
22  not considered at all, which appears to me what is occurring
23  here.

24          And frankly, I just don't know whether there is case
25  law -- I mean, what we're doing right now is we're looking

```
 1   behind the facts --
 2        THE COURT:  Well, let me just cut through that for a
 3   minute.  What you're saying is there are two steps here; one is
 4   the career offender status, and the other is whether it's even a
 5   crime.  Right?
 6        MR. WASSERMAN:  Whether it's a conviction at this
 7   point, from the Court's standpoint.
 8        THE COURT:  It's a conviction.  Now what's the
 9   guidelines range?
10        MR. WASSERMAN:  The guideline range, Your Honor,
11   frankly changes, because if he's not a career offender - and
12   this is something that Mr. Grimm and I have had discussions
13   about - there is the two-level gun bump that he now would be
14   eligible for.  And I'm not arguing one way or the other, but
15   that's -- I don't think anybody is going to disagree that he
16   would be eligible for that.  So that changes the base offense
17   level.
18        He's got two criminal history points from his PWID, and
19   then this reckless endangerment charge, I guess from '96 I think
20   he would still get one point because it's 10 years.  It's within
21   10 years of the offense that he's been convicted of here and
22   pled to.  And frankly, I think there's an argument from my
23   standpoint that his criminal history is underrepresented, and I
24   would like an opportunity to look into that and address that
25   with the Court.
```

10

1      THE COURT: Well, we're in a putting-things-off mood
2 this morning. Fine, let's put it off.
3      MR. WASSERMAN: Thank you, Your Honor.
4      THE COURT: The defendant is locked up, he's not going
5 anywhere. As Mr. Grimm himself argued yesterday, there's no
6 prejudice here. Let's sort it out.
7      I'm going to ask the probation officer to recalculate
8 the guidelines sentence without the career criminal status, but
9 otherwise considering the reckless endangerment conviction a
10 conviction. And whether the gun bump comes into play or not, I
11 don't know, and whether Mr. Wasserman wants to argue
12 underrepresentation, I suppose that's allowable.
13      Now, we can either do this tomorrow or we can do it the
14 third week of July. What's your pleasure?
15      MR. WASSERMAN: Your Honor, I would prefer the third
16 week in July. Any day of that week is fine. I can submit
17 paperwork in that time, and obviously provide Mr. Grimm an
18 opportunity to respond.
19      THE COURT: Actually, the fourth week of July would be
20 July the 26th. I want all counsel to know July the 26th is a
21 jam-packed day here. There's not going to be a lot of time
22 for --
23      MR. WASSERMAN: I just have a sentencing before
24 Judge Friedman at 9:15 on that day.
25      THE COURT: Why don't you come here when you're

11

1    finished with Judge Friedman and we'll squeeze you in whenever
2    we can.  9:30, Mr. Grimm?
3              MR. GRIMM:  What's the date the Court suggested?
4              THE COURT:  July 26th.
5              MR. GRIMM:  Yes, Your Honor.  The Court has already
6    ruled, but there was a motion filed that I was stalling, that I
7    was putting things off, misleading people, the government was
8    ready to go forward --
9              THE COURT:  I told you I don't want to hear about that
10   this morning.
11             MR. GRIMM:  The government was ready to go forward.
12   The Court ruled.  So if the Court doesn't want to hear it, the
13   26th is a good date.  I would just ask if the government is
14   going to file something, a pleading on this, if Mr. Wasserman
15   could just send me a copy.  I'm not being smart.  The
16   voicemail --
17             THE COURT:  I think he'll send you a copy of anything
18   he files.
19             MR. GRIMM:  Their voicemail system is down in the
20   U.S. Attorney's Office.  That's the only reason I say that.
21             THE COURT:  Hope they get it straightened out by -- do
22   you want this transcript back?
23             MR. GRIMM:  Could I have the original?  I could provide
24   a copy to the Court.
25             THE COURT:  Provide a copy to the Court.  I think we